**STATE of Missouri ex rel. Dan ATKINS, Relator-Respondent,**

v.

**Donald H. WHALEY, Clarence T. Hunter, Suzanne Hart, John A. Schicker, Jr., Mayor James Conway, Comprising the Board of Police Commissioners, St. Louis, Missouri, Defendants-Appellants.**

No. 41434.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 29, 1980.

Motion for Rehearing or Transfer to Supreme Court Denied March 14, 1980.

Application to Transfer Denied May 1, 1980.

C. John Pleban, St. Louis, for defendants-appellants.

David O. Danis, Samuel B. Murphy, Jr., St. Louis, for relator-respondent.

CRIST, Judge.

Petition for writ of prohibition wherein relator/respondent (hereinafter "Atkins") sought reinstatement to his former position as a police officer of the St. Louis Metropolitan Police Department. The circuit court granted the writ and thereby commanded the Board of Police Commissioners of the City of St. Louis (hereinafter "Board") to restore Atkins to his previous rank. The Board appeals the judgment of the circuit court and its issuance of the writ. We are constrained to reverse that judgment and, accordingly, quash the writ.

On June 2, 1977, Atkins (then a commissioned police officer) was charged with a violation of Rule 9, § 9.001(c) of the Police Department Manual which provides, "No insubordination or disrespect shall be directed towards a superior officer." One so charged has the statutory option of either a formal hearing before the Board or may, if one so chooses, dispense with the hearing and resolve the case by stipulation, consent or settlement. See § 536.060 RSMo 1978 as implemented by Rule 7, § 7.016 of the Police Manual. Atkins opted to pursue the latter course.

Section 7.016 of the Police Department Manual provides in pertinent part:

Commissioned Officers—Disciplinary Proceedings—After notification by the Inspector's Office of the proposed recommendation of the Chief of Police, the Department member shall be given the opportunity to accept it by signing the Consent to Accept and Waiver of Trial Form, which shall then be attached to and become part of the report. The provisions of the waiver are contingent upon subsequent approval by the Board.

With the consent and advice of his chosen attorney, Atkins executed a "consent to Recommended Disciplinary Punishment and Waiver of Board Trial" on August 2, 1977. This waiver form reflected the negotiated agreement between Atkins' attorney and the attorney for the Board. The recommended punishment embodied in the form called for, "Loss of pay while under suspension; and reduction to Probationary Police Officer for a period of not less than ninety (90) days." The waiver form and recommended punishment was ultimately approved and adopted by the Board.

Atkins did, in fact, assume the status of a Probationary Police Officer and on the ninetieth day his performance in that capacity was evaluated. Apparently, his evaluation did not fare well as he was not reinstated to his former position but, rather, his probationary status was extended an additional sixty (60) days. It was during this extension period that Atkins was summarily dismissed.

By agreement of the parties the question of whether Atkins properly discharged his duties as a probationary police officer is not an issue. The issue is whether Atkins was

 

automatically entitled to restoration of his former rank at the end of the ninety day probation period by virtue of the agreement embodied in the waiver form. Appurtenant to this, the main issue, is the status of probationary police officers, and the meaning of the language, "not less than ninety (90) days."

The Police Manual is the definitive text with regards to the position "probationary patrolmen" occupy. Rule 1, § 1.025 of that manual provides:

> Probationary Patrolmen . . . shall hold their respective positions at the pleasure of the Board and may be dismissed by the Board at any time without any cause assigned.

Obviously, Atkins was subject to dismissal at anytime during his tenure as a probationary patrolman unless, as he contends, the language in the contempt form was so equivocal that he was, in effect, denied his right to a hearing. In this vein, Atkins proffered evidence calculated to demonstrate that he and his attorney understood the "not less than ninety (90) days" language to denote automatic reinstatement upon expiration of the ninety day probation period. Atkins testified that such was his understanding, as did his attorney who further claimed familiarity with this language from previous, similar experiences with the Board. The Board attorney's testimony generally disagreed with this interpretation of the significance of such language.

We hold that the language "not less than ninety (90) days" is susceptible of but one literal interpretation: That Atkins was in no event to be restored to his former position before expiration of the ninety day probationary period. The disputed language was neither unclear nor ambiguous. See *U. S. v. Binghampton Construction Co.*, 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594 (1954).

Despite their protestations to the contrary, it should have been apparent to both Atkins and his attorney that Atkins would not be reinstated before the expiration of ninety days. Atkins' reinstatement was entirely discretionary with the Board. It had

the option to dismiss him at anytime while he was on probation, but chose to give him an additional sixty days to prove himself. Atkins' waiver of a Board hearing was valid. *Davis v. Long*, 360 S.W.2d 307, 313 (Mo.App.1962).

The judgment of the trial court is reversed and the writ of prohibition is quashed.

DOWD, P. J., and REINHARD, J., concur.